IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **18-80287**

UNITED STATES OF AMERICA, ex rel.
ROSELYN METAYER,

Civil Action No. Rosenberg/Hopkins

          Plaintiffs,

FILED *IN CAMERA* AND
UNDER SEAL

v.

Pursuant to
31 USC §3730(b)(2)

IEC US HOLDINGS, INC., d/b/a FLORIDA
CAREER COLLEGE, and its affiliates FLORIDA
CAREER COLLEGE HOUSTON CAMPUS;
FLORIDA CAREER COLLEGE JACKSONVILLE;
FLORIDA CAREER COLLEGE TAMPA;
FLORIDA CAREER COLLEGE ORLANDO;
FLORIDA CAREER COLLEGE WEST PALM
BEACH; FLORIDA CAREER COLLEGE BOYNTON
BEACH; FLORIDA CAREER COLLEGE MARGATE;
FLORIDA CAREER COLLEGE LAUDERDALE
LAKES; FLORIDA CAREER COLLEGE PEMBROKE
PINES; FLORIDA CAREER COLLEGE HIALEAH;
FLORIDA CAREER COLLEGE MIAMI, f/k/a FCC
HOLDINGS, INC OF DELAWARE, (d/b/a Florida
Career College, FCC, Anthem College, Anthem
College-Bryman School, Anthem College); f/k/a
FLORIDA CAREER COLLEGE, INC; and
IEC INTERNATIONAL EDUCATION CORPORATION
d/b/a FLORIDA CAREER COLLEGE, and its affiliates;

          Defendants

_____/

1

## FALSE CLAIMS ACT COMPLAINT

The Plaintiff, THE UNITED STATES OF AMERICA ex rel. ROSELYN METAYER,

hereby sues the Defendant and files this Complaint for Damages and says:

## I.    PARTIES

### A.  The Relator and The Plaintiff

1.      On behalf of the Plaintiff, the United States of America, Qui Tam Relator Roselyn

Metayer is a resident of Palm Beach County, Florida, and a United States citizen.

2.      Relator worked for Florida Career College from July 2015 through June 30, 2017.

3.      Relator worked first for Florida Career College as the Director of Financial Aid at

its Boynton Beach Campus.  In November of 2016, Florida Career College transferred Relator to

its West Palm Beach Campus, where she became its Director of Financial Aid.  In February of

2017, Relator was promoted and became the Regional Director of Financial Aid and oversaw both

the Boynton Beach and West Palm Beach Campus.

4.      On June 30, 2017, Relator resigned from Florida Career College after realizing the

College was falsely certifying that students enrolling in the programs had submitted valid high

school diplomas, while knowing that the diplomas were false.

5.      Realtor had an opportunity to personally observe the false certifications because of

her status as Director of Financial Aid. Realtor did not participate in the creation of false

certifications.

6.      Relator brings this action on behalf of the United States of America.

7.      As required under the False Claims Act, 31 U.S.C.  § 3730(a)(2), Relator

simultaneously with the filing of this Complaint, provided to the United States Attorney for the

Southern District of Florida a statement of all material evidence and information related to this Complaint.

8.      This disclosure statement supports the existence of "submission of a knowingly false or fraudulent claim for payment or approval," under the False Claims Act (31 U.S.C. § 3729(a)(1)).

9.      The United States of America is here named the Plaintiff because funds of the United States of America were and are awarded to the Defendants, pursuant to the HEA, Title IV, as a result of the false claims alleged in the Complaint.

**B.  The Defendants**

10.     The Defendants are large private, for-profit higher education companies that contend that they provide educational programs for adult students.

11.     IEC US Holdings, Inc., is a Florida corporation with its principal offices located at 16485 Laguna Canyon Road, Suite 300, Irvine, California. IEC US Holdings, Inc., is a large-sized organization in the vocational school industry located in Miami, Florida. IEC US Holdings, Inc., opened its doors in 2014 and now has an estimated $12.8 million in yearly revenue and 500 employees. IEC US Holdings, Inc., d/b/a Florida Career College operates Florida Career College Jacksonville, Florida Career College Tampa, Florida Career College Orlando, Florida Career College West Palm Beach, Florida Career College Boynton Beach, Florida Career College Margate, Florida Career College Lauderdale Lakes, Florida Career College Pembroke Pines, Florida Career College Hialeah, and Florida Career College Miami, all of which are large recipients of federal funds.

12.     FCC Holdings, Inc., was and is a Delaware Corporation authorized to conduct business in Miami-Dade County, Florida. FCC Holdings, Inc. is an educational institution that

owns and operates campuses which offer training and testing services in the fields of allied health and information technology (IT). The programs offered by the institute include business application developer, computer network engineer, computer network technician, medical assistant technician, office system technologist, and website designer.  In addition, it offers certification exams such as Microsoft Office Specialist, Oracle Certified Professional (OCP), and Microsoft Certified Systems Engineer (MCSE).  The institution was founded in 1982 and is headquartered in Lauderdale Lakes, Florida

13.    IEC International Education Corporation is a California corporation with its principal offices located at 16485 Laguna Canyon Road, Suite 300, Irvine, California.  IEC owns and operates accredited colleges across the United States.  IEC is the parent company of UEI College and United Education Institute, operating a total of seventeen schools nationwide.

## II.    JURISDICTION & VENUE

14.    This is an action brought pursuant to the False Claims Act, 31. U.S.C. §§ 3729, et seq., and subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

15.    This is an action  to  recover  damages  and  civil penalties  on  behalf of the United States of America arising from false statements and claims made or caused to be  made by the Defendants and the subsidiary corporations (collectively called FCC or the "Defendants") to obtain millions of dollars annually from the United States Department of Education pursuant to the Higher Education Act, Title IV ("HEA"), in violation of the False Claims Act,  31 USC  §§ 3729,  et seq., (the "FCA").

16.    This case arises from the wrongful conduct of the Defendants incident to obtaining funds from the United States Department of Education pursuant to the Higher Education Act, Title IV.

17.     This Court has *in personam* jurisdiction over the Defendants under 31 U.S.C. § 3732(a), which authorizes nationwide service of process and because the Defendants can be found in and transact the business that is the subject matter of this lawsuit in the Southern District of Florida.

18.     Title 31 U.S.C. § 3732(a) provides "Any action under section 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant, can be found, resides, transacts business, or in which any proscribed by section 3729 occurred."

19.     Venue is proper in the United States District Court for the Southern District of Florida because IEC US Holdings, Inc., is a Florida corporation that transacts business in the Southern District of Florida.  IEC U.S. Holdings maintains and operates at least seven campus in the Southern District of Florida: (a) Florida Career College West Palm Beach, (b) Florida Career College Boynton Beach, (c) Florida Career College Margate, (d) Florida Career College Lauderdale Lakes, (e) Florida Career College Pembroke Pines, (f) Florida Career College Hialeah, and (g) Florida Career College Miami.  The majority of the witnesses and facts mentioned in the Complaint also occurred in the Southern District of Florida at the Boynton Beach campus.

20.     This case is not based on a public disclosure.

## III.   SUMMARY OF THE LAW AND GENERAL ELIGIBILITY REQUIREMENTS FOR FEDERAL STUDENT LOANS

21.     Title IV Higher Education Act of 1965 (HEA), 20 U.S.C. §§ 1070 *et seq.,* authorizes numerous federal aid programs that provide support to both individuals pursuing a postsecondary education and institutions of higher education.

22.     Pursuant to HEA, the Department provides financial assistance in the form of grants, loans, loan guarantees and interest subsidies to eligible students to help defray the costs of education, including the Federal Pell Grant Program ("Pell"), 20 U.S.C. §§ 1070a *et seq.*, 34 CRF § 690, the Federal Family Education Loan Program ("FFELP"), 20 U.S.C. §§ 1071 *et seq.,* 34 CFR § 682 (which includes the Federal Stafford Loan Program ("Stafford")), the Federal Direct Student Loan Program, 20 U.S.C. §§ 1087a *et seq.,* 34 CFR § 685; the Federal Perkins Loan Program, 20 U.S.C. §§ 1087aa *et seq.,* 34 CFR §§ 674; the Federal Work Study Program, 42 U.S.C. §§ 2751 *et seq.,* 34 CFR § 675, and the Federal Supplemental Educational Opportunity Grant Program ("FSEOG"), 20 U.S.C. §§ 1070b *et seq.,* 34 CFR § 676.

### Eligibility for Title IV Loan and Grant Programs

23.     Each of the Title IV programs requires compliance with specific requirements as a prerequisite to obtaining federal funds.  One requirement is that in order to become eligible to receive Title IV funds each institution must enter into a PPA with the Department, 20 U.S.C. § 1094(a), 34 CFR § 668.14(a)(1). PPAs expressly "condition the initial and continuing eligibility of the school to participate in a program upon compliance with" the requirements of 20 U.S.C. § 1094 and 34 CFR § 668.14.

24.     The statute and PPA explicitly require that participating schools "comply with all statutory provisions of or applicable to Title IV of the HEA." 34 C.F.R. 668.14(b)(1).

25.    To be eligible to participate in and receive payment from the Title IV loan and grant programs, educational institutions must only admit students who possess a high school diploma or its recognized equivalent.

26.     After a school becomes eligible to receive Title IV funds by entering into a PPA, claims for payment of those funds can be made in various ways.  Under some programs, such as

the Pell Grant program, students submit requests for funding directly to the Department, or to the Department with the assistance of schools, while under other programs, such as the Guaranteed Student Loan ("GSL") program and the FFELP, students and schools jointly submit requests for loans to private lenders which are guaranteed by state guaranty agencies that are, in turn, insured by the Department, which pays only in the event of a student default.

27.     With respect to all Title IV programs, the disbursement of federal funds rests on required statements of eligibility made by schools that were necessary for requests for payment to be considered.

### The Pell Grant Program

28.     The Pell Grant program provides federal funds to assist post-secondary school students in financial need, 20 U.S.C. §§ 1070a – 1070a(b).

29.     Pell Grants come directly from the Department and are based upon student needs as calculated by application of a strict statutory formula, 20 U.S.C. §§ 1070a(b).

30.     The PPA entered into between the institution and the Department must specifically authorize the institution to receive Pell Grant funds from the Department, to accept student applications, and to calculate and disburse Pell Grants in accordance with the rules established by the Department, 20 U.S.C. § 1094(a), 34 C.F.R. § 690(g).

31.     To receive a Pell Grant, a student must initiate the process by submitting an application to the school which will then electronically transmit it to the Department on his or her behalf. Or, the student can directly submit an application to the Department. 34 C.F.R. § 690.12(b).

32.     In either case, the school then certifies that the student possesses a high school degree or its equivalent and is enrolled in an eligible program and that grant payments will be made in accordance with applicable statutes, regulations, and instructions.

33.     In addition to submitting a Student Aid Report ("SAR") to the Department, schools are required periodically to submit documents entitled "Institutional Payment Summaries" ("IPS"). Schools certify on the IPS that the information contained in the IPS and the SAR is true and correct to the best of their knowledge.

34.     The educational institution is also required to periodically submit to the Department "Recipient's Cash Advance Requests" ("RCAR") in order to obtain additional funds from the Department under the Pell Grant program. The RCAR sets forth the institution's planned cash disbursements and certifies that the outlays are made in accordance with the program requirement and that payment is due to the school.

35.     Assuming a school's request for disbursement of Pell Grant funds is consistent with the Department's information, the Department of Education transfers the Pell Grant funds electronically, directly into the educational institution's account. Upon receiving the Pell Grant funds, the educational institution credits students for tuition paid.

36.     In addition to the grants themselves, the Department also pays to the educational institution an administrative cost allowance of $5.00 for each student enrolled in the program, to be used to pay the costs of administering the Pell Grant and other student financial programs. 20 U.S.C. § 1096; 34 CFR § 690.10.

**The GSL Program**

37.     The GSL program, which encompasses FFELP and Stafford Loans, provides for federally insured low-interest loans to qualified post-secondary school students in financial need. 20 U.S.C. §§ 1071 *et seq.*

38.     The Department typically does not lend money directly to students under the GSL program. Eligible students apply to private lenders that meet all Title IV eligibility

requirements.   34 CFR § 682.200(b).   A public or private non-profit guarantee agency guarantees the lender in case of default, 20 U.S.C. § 1078(c).   In the event of default, this agency is reimbursed by the Department for all or part of the default claims paid.  *Id.*

39.     In order to participate in the GSL program, a student completes a portion of the GSL application and submits the application to the educational institution.  The institution then completes a portion of the GSL application and certifies the accuracy of the information it provides to the Department. 34 CFR § 682.102.

40.     The educational institution then submits the application to a lender.  Upon approval by the lender, the lender obtains a loan guarantee from a guarantee agency. 34 CFR § 682.102. The loan is made in reliance upon the accuracy of the information provided by the educational institution.

41.     The lender transfers the GSL funds directly into the educational institution's account.  Upon receiving the GSL funds, the educational institution credits students for tuition paid.

42.     For subsidized Stafford loans, the government pays the interest on the student's behalf during the time the student is enrolled in school or at least a half-time basis and during the student's grace period before repayment commences.  34 CFR § 682.102(d)(2).

43.     In the event of default on the loan, the Department pays to the guarantee agency all or part of the unpaid principal and accrued interest as well as administrative costs equal to one (1) percent of the loan.  34 CFR § 682.404.

44.     The HEA requires that, to be eligible to participate in and receive payment from its loan and grant programs, an educational institution must adhere to the following requirements:

a.    It must be legally authorized by the state where the institution offers postsecondary education to provide a postsecondary education program;

b.    It must be accredited by a nationally recognized accrediting agency or have met the alternative requirements, if applicable, and

c.    It must admit as a regular student only individuals with a high school diploma or its recognized equivalent, or individuals beyond the age of compulsory school attendance in the state where the institution is located.

45.    The False Claims Act defines "claim" as: a demand for money or property made directly to the Federal Government or to a contractor, grantee, or other recipient if the money is to be spent on the government's behalf and if the Federal Government provides any of the money demanded or if the Federal Government will reimburse the contractor or grantee.

46.    The False Claims Act prohibits the submission of false or fraudulent claims for payment to the United States or the making of false statements for the purpose of causing false claims to be paid.  The False Claims Act, 31 U.S.C. § 3729(a)(1) provides that any person who:

(a) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F) or (G);

(d) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(e)   is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(f)   knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(g)   knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

47.   Under these loans the United States Government awards billions of dollars a year to help students obtain their educations at colleges and vocational schools.

48.   The federal funds, however, do not go to the students.

49.   Instead, the educational institution requests the funds of the United States Department of Education or a third party intermediary lender.

50.   The United States Government or lender wires the funds directly into the institutions' accounts.

51.   The institutions then credit their students for tuition.

52.     Students are responsible for paying back the United States Government once they graduate or stop attending the university.

53.     A Student disqualified from a university must still repay the federal loans.

54.     These students, unable to complete their education and obtain a decent-paying job to repay their federal loans are forced into dire financial situations while Florida Career College continues to turn a profit.

## IV.    DEFENDANTS' FRAUDULENT CONDUCT AND SUBMISSION OF FALSE CLAIMS

55.     At issue are false claims and statements submitted by Defendants to the United States Department of Education (the "Department") in order to obtain federal funds and financial aid for students at the Defendants' post-secondary educational campuses.

56.     Pursuant to the Act, Qui Tam Relator Roselyn Metayer seeks to recover on behalf of the United States damages and civil penalties arising from false and improper claims for payment that the Defendants submitted, or caused to be submitted, to the Government and in connection with student loans and grant applications under Title IV of the Higher Education Act of 1965 ("HEA") and related state statutes from at least November 2016, through the present.

57.     The Defendants are engaged in fraudulent conduct that violates the False Claims Act in several ways. Thousands of times each year:

    a.  The Defendants knowingly use and cause students to use false High School Diplomas and certificates which are necessary prerequisites to the Defendants' eligibility for Title IV funds, in the loan and grant applications for payment, and

    b.  In each and every loan and grant application, Defendants falsely certify or cause the students to falsely certify that the student at issue either obtained a high

school diploma or obtained an equivalent certificate from an eligible institution prior to being accepted into their programs.

58.     Defendants and their subsidiaries knowingly submit false high school diplomas and make false statements to the Department in order to receive funds for their schools.

59.     The following examples of student financial aid applications and packages illustrate Defendants' false claims:

a.     Woldy Toussaint – false Haitian high school diploma and the director of Florida Career College failed to receive an original copy of the diploma;

b.     Aneange Pierrecilus – false Haitian high school diploma wherein the student only attended high school for one year before graduating and the director of Florida Career College failed to receive an original copy of the diploma;

c.     Fioldalis Lubin – Foreign Diploma Evaluation Application is not signed by the FCC Director;

d.     Donfred Valembrun – false Haitian high school diploma wherein the student only attended high school for one year before graduating and the director of Florida Career College failed to receive an original copy of the diploma;

e.     Elaine Louis – false Haitian high school diploma wherein the student only attended high school for one year before graduating and the director of Florida Career College failed to receive an original copy of the diploma;

f.     Ilene Gervelus – false Haitian high school diploma;

g.     Martine Jean Francois – false Haitian high school diploma;

h.      Juliette Jules – false Haitian high school diploma; student only attended school for one year and the director of Florida Career College failed to receive an original copy of the diploma;

i.      Daleus Pharvens – false Haitian high school diploma and the director of Florida Career College failed to receive an original copy of the diploma;

j.      Jean V. Bastien - no high school diploma or Foreign Diploma Evaluation Application included;

k.      Gilbert Philippe - no high school diploma or Foreign Diploma Evaluation Application included;

l.      Gardy Yves - no high school diploma or Foreign Diploma Evaluation Application included;

m.      Rose Ann Dumervil – false Haitian high school diploma; student only attending high school for one year before graduating and the director of Florida Career College failed to receive an original copy of the diploma;

n.      Lovely Osias – submitted a high school diploma from Goliath Academy stating that she graduated on October 10, 2016.  FCC refused to accept the diploma because the school had been "blacklisted."  Osias then submitted a false high school diploma from Haiti stating she graduated in June of 2012. Knowing that Osias had previously submitted a diploma from Goliath Academy, FCC accepted the diploma from false Haitian diploma and received monies from the government for enrolling Osias into FCC.

o.      Roldy Antoine – false Haitian high school diploma and the director of Florida Career College failed to receive an original copy of the diploma;

p.    Lutherson Presendieu – false Haitian high school diploma and the director of Florida Career College failed to receive an original copy of the diploma; and

q.    Brenda Ovilmar – On September 16, 2015, Ovilmar completed FCC's Admission Affidavit stating she received her GED from Adult Education in 2012.  Then on December 20, 2016, Ovilmar completed IEC/FCC form "Proof of High School Graduation (POG) or General Education Development (GED) Verification Form"; on this form Ovilmar indicated that she obtained her GED in September of 2009.  On December 22, 2016, Charmaine Hatchett, Records Coordinator for Adult Education, informed IEC/FCC that Ovilmar did not graduate from high school nor did she have her GED.  Notwithstanding the obvious fact that Ovilmar did not qualify for financial aid, Stephanie Gold, ICE/FCC's Campus Student Financial Advisor, confirmed that Ovilmar qualified for financial aid and that she had a GED.  As a result, IEC/FCC received financial aid funds knowing that that Ovilmar did not met meet the requirements.

60.    Most of the students that are submitting false diplomas are from Haiti and are unable to speak, write, or read English.  Many of the Haitian students are left with hefty federal loans they need to repay without the means to repay the loans. Per Realtor, Florida Career College would also target people who had recently been released from jail, who had criminal records that would make it difficult to obtain employment.

61.    The institutions, meanwhile, retain the fraudulently obtained federal funds and profit at the students' detriment.

62.     Over a period of many years, in reliance of Defendants' false and fraudulent agreements and promises, the Department was requested to pay and did pay out hundreds of millions of dollars in student grants, payments of loan interest, and repayment of defaulted guaranteed student loans, all used for tuition payments at Defendants' individual campuses. Each of these requests for payment of such funds constitutes an actionable false claim under the FCA.

63.     Defendants' agreements and promises, and each and every one of their applications, were and are false and fraudulent. Ms. Metayer has first-hand knowledge about the Defendant's practice of knowingly submitting false and fraudulent high school diplomas to the Department in order to receive funds they would not otherwise be entitled to under Title IV HEA.

64.     Defendants also implemented internal procedures that its employees were required to follow, allegedly to ensure that the college was complying with the loan application requirements of the Department. One of the procedures required that a director from Florida Career College had to certify that he or she received an original copy of a student's diploma before submitting a request for funding.

65.     The director was required to sign and date a form titled Foreign Diploma Evaluation Application certifying that he or she received an original copy of the diploma and attach a copy of the diploma to the form.

66.     Florida Career College chose to send the Foreign Diploma Evaluation Applications and diplomas to one person exclusively, Ms. Rose Hart. Ms. Hart was the President of Universal Translation & Evaluation Services Credential Evaluation Service.

Ms. Hart evaluated the diplomas at every Florida Career College campus. Ms. Hart charged $100.00 to evaluate each diploma and determine authenticity.

67.     Per Realtor, Ms. Hart would "rubber stamp" any diploma submitted to her. After reviewing the diploma, Ms. Hart would email Florida Career College and let them know if the diploma was authentic.  By sending falsified diplomas to Ms. Hart, Florida Career College failed to legitimately execute the Department's compliance process.

68.     As a result of Florida Career College's fraudulent behavior, hundreds of loans were submitted to the Department without Ms. Hart or any director actually receiving a copy of the original diploma.

69.     Relying upon false representations made by Florida Career College regarding the authenticity of Florida Career College students' diplomas, the Department issued millions of dollars' worth of funding to Florida Career College.

70.     This aforementioned conduct constitutes fraud and gives rise to a cause of action under the False Claims Act. Accordingly, Realtor and Plaintiffs seek relief.


V.     **REQUESTED RELIEF**

**WHEREFORE,** Plaintiffs request the following relief:

a.     Judgement in favor of the United States of America against Defendants, jointly and severally, by reason of the violations of the False Claims Act as set forth above, in an amount equal to three times the amount of damages the Unites States has sustained because of the Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars and not more than Ten Thousand Dollars, for each violation, plus three times the amount of damages which the United States Government has sustained, pursuant to 31 U.S.C. § 3729(a);

b.   Award to Relator, as the Qui Tam plaintiff, of the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal False Claims Act on the United States' recovery;

c.   Award to Relator of all reasonable expenses which the Court find to have been necessarily incurred, plus reasonable attorneys' fees and costs; and

d.   Such other further relief as the Court deems proper.

Respectfully submitted,

By: _s/_____
John H. Hickey, Esq. (FBN 305081)
E: federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*