UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:18-cv-80287-ROSENBERG/HOPKINS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> *ex rel.* ROSELYN METAYER, ) <br> ) <br> Plaintiffs/Relator, ) <br> ) <br> vs. ) <br> ) <br> IEC US HOLDINGS, INC., d/b/a ) <br> FLORIDA CAREER COLLEGE, and its affiliate, ) <br> FLORIDA CAREER COLLEGE WEST PALM BEACH; ) <br> Defendants. ) <br> _____ ) | Sealed <br><br> **FILED *EX PARTE* AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 (b)(2)** <br><br> FILED by ___ KS ___ D.C. <br> JUN 08 2018 <br> STEVEN M. LARIMORE <br> CLERK U.S. DIST. CT. <br> S. D. of FLA. – MIAMI |

**FIRST AMENDED FALSE CLAIMS ACT COMPLAINT FOR DAMAGES**

The Relator-Plaintiff, ROSELYN METAYER ("Relator" and/or "Metayer"), brings this action in the name of the United States of America against Defendants IEC US HOLDINGS, INC., doing business as FLORIDA CAREER COLLEGE ("FCC"), and its affiliate, FLORIDA CAREER COLLEGE WEST PALM BEACH ("FCC West Palm Beach") and files this Amended Complaint for Damages and represents as follows:

## I. INTRODUCTION

1. On behalf of the United States of America, Relator brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33 (2016), and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

2. Relator brings this claim on behalf of the United States of America, acting on behalf of the United States Department of Education ("Department of Education"). The

1

Department of Education is a federal agency that, among other things, administers the student financial assistance provisions under Title IV of the HEA.

3. This action arises from false statements and claims that Defendant IEC US HOLDINGS, INC. ("IEC US Holdings") doing business as FLORIDA CAREER COLLEGE, in West Palm Beach, Florida (where Relator worked), knowingly presented to, or caused to be presented to, the United States and the Department of Education in violation of the FCA and common law.

4. Defendants knowingly presented and/or made, or caused to be presented and/or made, the false claims and statements at issue, in order to participate in the federal student aid programs authorized pursuant to Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1070 (2016) et seq, ("Title IV, HEA Programs"). Title IV, HEA Programs, which are administered by the Department of Education, provide students with financial aid in the form of Federal Pell Grants and supplemental educational opportunity grants to those students who demonstrate financial need, as well as loans including subsidized and unsubsidized Stafford loans, Campus Based Programs, and Federal Direct Loans. From November 2016 to May of 2017, FCC West Palm Beach engaged in a course of fraudulent conduct by knowingly requesting and/or receiving Title IV funding on behalf of FCC West Palm Beach students who had not obtained a GED, a high school diploma, or the foreign equivalent of a high school diploma.

5. In order to be eligible to receive federal funding under Title IV, FCC was required to adhere to a variety of regulations related to the operation of its for-profit, proprietary schools. See, e.g., 34 C.F.R. Parts 660, 668 (2016). FCC entered into contractual agreements with the Department of Education, called Program Participation Agreements

("PPAs") in which FCC specifically agreed to abide by these regulations. Execution of these PPAs with the Department of Education was a condition precedent to FCC's eligibility to receive federal funding under Title IV of the HEA. FCC also certified each time it drew down federal grant monies that the funds were being expended in accordance with the conditions of the applicable PPAs.

6. During all times material hereto, Title 34 Code of Federal Regulations [34 C.F.R.] § 668.32 (2016) provided, among other things, that:

> A student is eligible to receive title IV, HEA program assistance if the student
> ---
> (e)(1) Has a high school diploma or its recognized equivalent; . . .
>
> (f) Maintains satisfactory progress in his or her course of study according to the institution's published standards of satisfactory progress that satisfy the provisions of § 668.16(e), and, if applicable, the provisions of § 668.34;

34.C.F.R. § 668.32 (2016).

7. FCC agreed that it would comply with these and other requirements in each PPA it executed.

8. During November of 2016 and continuing through May of 2017, FCC engaged in a scheme to defraud the Department of Education to receive federal funding it would not otherwise have been entitled to receive.

9. FCC made false statements and concealed material information from the Department of Education when requesting federal funding under Title IV of the HEA. For example, FCC and its employees knowingly submitted and/or caused to be submitted false information relating to the eligibility of students to receive Title IV, HEA program assistance, by providing false documentation indicating that at least twenty-six students had high school

3

diplomas or the recognized equivalent of a high school diploma, when such students did not have such credentials.

10. FCC engaged in fraudulent conduct in an attempt to secure federal aid for students who, but for FCC's fraudulent conduct, would have been ineligible for assistance under Title IV of the HEA. FCC fabricated high school diplomas, foreign high school diplomas, transcripts, and/or GED certificates of at least twenty-six of its prospective students in order to make it appear as if those students were eligible to enroll at FCC. Relator examined the financial aid file of at least one prospective student for whom FCC had fabricated a foreign high school diploma, W.T.[1], and observed that FCC had received Title IV funding on his behalf.

11. FCC's conduct was knowing and material to its continued eligibility to participate in the Title IV programs. FCC has repeatedly requested Title IV funding that it was not eligible for and did receive Title IV funding as to at least one student.

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over the United States' claims brought under the FCA, 31 U.S.C. §§ 3279 (2016), et seq., pursuant to 31 U.S.C. §§ 3730 (2016) and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a) (2016).

13. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) (2016) because at all times material hereto, Defendants transacted business and are found in this district, and acts proscribed by 31 U.S.C. § 3729 (2016) occurred in this district.

---

[1] Relator has provided this student's full name to the United States.

4

14. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) (2016), and under 28 U.S.C. §§ 1391(b) and 1395(a) (2016), because certain of the acts that form the basis of this Complaint occurred in this district.

### III. PARTIES

15. Metayer is a sui juris resident and citizen of Palm Beach County, Florida, and a United States citizen. As all times material hereto, Metayer was an employee of FCC, a for-profit college owned and operated by IEC US Holdings. From July 2016 through November 28, 2016, Relator was employed as the Director of Financial Aid at FCC's Boynton Beach Campus. On November 28, 2016, FCC transferred Relator to its West Palm Beach Campus, where she became its Director of Financial Aid. In February of 2017, Relator was promoted and became the Regional Director of Financial Aid and oversaw both the Boynton Beach Campus and the West Palm Beach Campus. On June 30, 2017, Relator resigned from FCC.

16. Defendant IEC US Holdings ("IEC") is a Florida corporation with its principal offices located at 16485 Laguna Canyon Road, Suite 300, Irvine, California and that does business in Palm Beach County, Florida as Florida Career College West Palm Beach. IEC is a large-sized for-profit organization in the vocational school industry. IEC is the parent company of UEI College, United Education Institute, Florida Career College, and US Colleges. IEC owns and operates a total of seventeen schools nationwide.

### IV. FEDERAL STATUTORY BACKGROUND

17. Relator alleges that in November of 2016 to May of 2017, FCC violated 31 U.S.C. § 3729 (2016) (the False Claims Act) by "knowingly" submitting and/or causing the submission of false claims for payment to the Department of Education in the form of Free Applications for Federal Student Aid (FAFSA) and the resulting drawdowns of Title IV funds

5

related to each approved FAFSA. These claims for payment were false because FCC (1) knowingly made false statements and promises in its PPAs, and in certifications accompanying its drawdowns of federal aid, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of Title IV funding; and/or (2) made, our caused to be made, false representations in grant and loan applications that the students seeking federal financial aid were eligible to receive such aid.

### A. The Federal False Claims Act (FCA)

18. The FCA provides in pertinent part that a person is liable to the United States government for three times the amount of damages the government sustains because of the act of that person, plus a civil penalty of not less than $10,957 and not more than $21,916 for each instance in which the person, among other things: (A) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" (31 U.S.C. § 3729(a)(1)(A)(2016) and/or (B); 28 CFR 85 (2017) (adjusting the penalty rates for inflation and designating that the increased rates are applicable only to civil penalties assessed after February 3, 2017, whose associated violations occurred after November 2, 2015 ). The FCA also makes a person liable to the United States government for three times the amount of damages the government sustains as a result of that person's actions, plus a civil penalty of not less than $10,957 per instance and not more than $21,916 per instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" (31 U.S.C. § 3729(a)(1)(B) (2016).

19. The FCA defines the term "claim" to mean:

> any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that— (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if

6

the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government— (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded;

31 U.S.C. § 3729(b)(2)(A) (2016).

20. The FCA defines the terms "knowing" and "knowingly" to mean that a person, with respect to information: (i) "has actual knowledge of the information;" or (ii) "acts in deliberate ignorance of the truth or falsity of the information;" or (iii) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A) (2016). The FCA further provides that the terms "knowing" and "knowingly" require no proof of specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B) (2016).

### B. The Title IV, HEA Programs

21. Title IV of the HEA, 20 U.S.C. § 1070 (2016) et seq., established various student loan and grant programs, including but not limited to the Federal Pell Grant Program ("Pell," "Pell Grant" or "Pell Grants"), the Federal Direct Loan ("FDL") Program, and the Campus Based Programs in order to financially assist eligible students in obtaining a post-secondary education (collectively the "Title IV, HEA Programs").

### C. Federal Regulations Governing Title IV Funding

22. There are a variety of federal statutes and regulations that govern the award of Title IV, HEA program funds. First, only "eligible" students are permitted to receive federal financial aid under Title IV of the HEA. In order to qualify as an eligible student, a student must meet the requirements of 34 C.F.R. § 668.32 (2016). Among other things, the student must have a high school diploma or its recognized equivalent, unless an enumerated exception applies (such as, during the relevant time period, having "obtained a passing score

7

specified by the Secretary on an independently administered test") and must be maintaining satisfactory academic progress in his or her course of study according to the school's published standards, and in accordance with federal guidelines. 34 C.F.R. §§ 668.32, 668.34 (2016).

23. The Department of Education has the authority to provisionally certify, certify, revoke, or terminate an institution's eligibility for participation in Title IV, HEA programs. 34 C.F.R. §§ 668.13(d) (2016). If the institution is not meeting the obligations outlined in its PPA or if the Secretary of Education determines that an institution has engaged in substantial misrepresentation, the institution's PPA can be revoked. 34 C.F.R. § 668.71 (2016).

**D.     PPAs**

24. All post-secondary educational institutions must enter into PPAs with the Department of Education in order to participate in any Title IV, HEA program, other than the LEAP or NEISP programs. any Title IV, HEA 34 C.F.R. § 668.14 (2016).

25. "A program participation agreement conditions the initial and continued participation of an eligible institution in any Title IV, HEA programs upon compliance with the provisions of this part, the individual program regulations, and any additional conditions specified in the program participation agreement that the Secretary requires the institution to meet." 34 C.F.R. § 668.14(a)(1) (2016).

26. By entering into a PPA, an institution agrees that it will comply with all statutory provisions of or applicable to Title IV of the HEA. 34 C.F.R. § 668.14(b)(1) (2016).

27. 34 C.F.R. § 668.32(e)(1) (2016) is applicable to Title IV of the HEA because it requires students to have earned a high school diploma or its foreign equivalent before becoming eligible for Title IV, HEA funds. Accordingly, FCC was violating the terms of its

8

PPAs and, in turn, violating 34 C.F.R. § 668.14 (2016) when it falsely certified that its students had obtained high school diplomas or the foreign equivalent of high school diplomas.

### E. Claims for Payment under Title IV Programs

28. After a school becomes eligible to receive Title IV funding by entering into a PPA, claims for payment of those funds can be made in various ways. Under Pell and the FDL Program, for example, students submit requests for funding directly to the Department of Education, or to the Department of Education with the assistance of schools.

29. With respect to all Title IV, HEA Programs, the disbursement of federal funds rests on required statements of eligibility. Schools must make such statements for payment requests to be considered. 34 C.F.R. 668.28 (2016).

#### 1. Title IV Loan Programs

30. The FDL Program is a loan program administered by the Office of Federal Student Aid. Under the FDL Program, the federal government is the lender, and does not pay subsidies to private lenders or guarantee agencies. The federal government borrows funds from the U.S. Treasury and distributes the loan directly to the student at his or her school. The student repays the loan directly to the government. Although the FDL Program is administered in part by the U.S. Department of Education, the federal government pays private contractors to handle most of the loan servicing tasks and defaulted loan collections. Servicing contracts are awarded through a competitive bidding process. The FDL Program includes Direct Subsidized Stafford Loans, Direct Unsubsidized Stafford Loans, Direct PLUS Loans, and Direct Consolidation Loans. 34 C.F.R. § 685.100 (2016).

31. In order to participate in any Title IV loan program, as opposed to a grant program, a student completes a Master Promissory Note (MPN) and submits the MPN to the educational institution. The institution, in turn, completes a "School Certification," in which

it certifies the accuracy of the information it provided to the Department of Education and the student's eligibility for the loan. 34 C.F.R. § 685.201; 34 C.F.R. § 682.102; 34 C.F.R § 682.603 (2016).

32. For subsidized Stafford Loans, the government pays the interest on the student's behalf during the time the student is enrolled in school on at least a half-time basis, and during the student's grace period before repayment commences. 34 C.F.R. § 682.102(b) (2016).

33. In the event of a default on the loan, the Department pays to the guarantee agency all or part of the unpaid principal and the accrued interest, as well as a variety of administrative costs34 C.F.R. § 682.404 (2016).

### 2. Title IV Grant Programs

34. Under the Pell Grant program, which provides federal funds to assist post-secondary school students in financial need, 20 U.S.C. § 1070(a) (2016); 34 C.F.R. § 690.1 (2016), the student initiates the process by submitting a FAFSA to the Department of Education to have the student's expected family contribution ("EFC") calculated in order to receive an accurate amount of Pell funds. 34 C.F.R. § 690.12(a) (2016). The student either sends the FAFSA directly to the Department of Education or provides it to a school for the school to transmit to the Department of Education on the student's behalf. 34 C.F.R. § 690.12(b) (2016).

35. The Department of Education sends the student's application information and EFC to the Student Aid Report ("SAR") and sends each school the student has designated an Institutional Student Information Record ("ISIR") for that student. 34 C.F.R. § 690.13 (2016).

36. The school uses the above-described information, including the EFC, to calculate the student's eligibility for all aid and to assemble a "financial aid award package" for the student borrower. 34 C.F.R. § 668.165(a) (2016). The financial aid package may include Pell Grants, FDL Program Direct loans, or Campus-Based Aid (which, in turn, includes Federal Supplemental Educational Opportunity Grants, Federal Work-Study, and Federal Perkins Loans), as well as other scholarships or aid for which the student may be eligible.

37. The student can accept all or part of the financial aid award package. 34 C.F.R. § 668.165(a) (2016).

38. Provided that the information submitted by the school is consistent with the information possessed by the Department of Education, the Department of Education makes funds available for the school to electronically draw down from a computerized system known as "G5."

39. Schools must electronically certify in G5 prior to drawing down the funds that "by processing this payment request . . . the funds are being expended within three business days of receipt for the purpose and condition[s] of the [Program Participation] agreement."

40. In addition to the Pell Grants themselves, the Department of Education also pays to the school an annual administrative cost allowance of $5.00 to each student who receives a Pell Grant, to be used to pay the costs of administering the Pell Grant and other Title IV, HEA federal student aid programs 20 U.S.C. § 1096, 34 C.F.R. § 690.10 (2016).

## V.    DEFENDANTS' FRAUDULENT CONDUCT AND SUBMISSION OF FALSE CLAIMS

41. Relator has knowledge of fraudulent conduct that occurred at the FCC West Palm Beach campus during November of 2016 to May of 2017.

42. At issue are false claims and statements Defendants submitted to the Department of Education in order to obtain federal funds and financial aid for students at the Defendants' post-secondary educational campuses.

### A. Florida Career College Engaged in Fraudulent Schemes that Caused the U.S. Department of Education to Determine Eligibility for Title IV Funding to Ineligible Students

43. In order to receive funding under Title IV of the HEA, 34 C.F.R. § 668.32(e)(1) (2016) requires that a prospective college student, including potential FCC students, have a valid high school diploma or its recognized equivalent. By signing its PPAs and applying for Title IV funding, FCC agreed it would comply with these regulations. 34 C.F.R. § 668.14(b)(1) (2016).

44. FCC engaged in various fraudulent schemes that violate the FCA by requesting that the Department of Education grant Title IV funds to FCC on behalf of students who were not qualified to receive such federal funds. These requests for payment violate 31 U.S.C. § 3729(a)(1)(A)(2016), which penalizes any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." At least twenty-six times between November of 2016 and May of 2017:

> a. FCC knowingly used and caused students to use fake transcripts, fake foreign diplomas, fake high school diplomas and/or fake GED certificates (which are necessary prerequisites to the Defendants' eligibility for Title IV funds), in the loan and grant applications for payment;
>
> b. FCC falsely certified or caused prospective students to falsely certify that the prospective students had earned a high school diploma or its equivalent prior to being accepted into FCC's programs; and

12

      c. FCC misled the government into believing that the students' eligibility for Title IV funds had been reviewed by an independent third party when in fact it was only reviewed by Rose Hart, president of a company called Universal Translation & Evaluation Services, who was handpicked and paid by FCC to "rubber stamp" every foreign diploma she reviewed.

45.     FCC also enrolled students without GEDs, high school diplomas, or the foreign equivalent of a high school diploma who did not speak English. These students had no real hope of benefitting from FCC's educational courses or paying back their student loans.

46.     Through these schemes, FCC was able to increase its enrollment numbers and request federal financial aid on behalf of its students, regardless of whether the students were qualified or were actually benefitting from FCC's instruction.

47.     The student financial aid packages FCC submitted or caused to be submitted for the following FCC students[2] each included a false secondary education credential in the student's file (i.e., an affirmation that the student had earned a high school diploma or its equivalent when the student did not) and illustrate FCC's false claims. The common thread among these cases is that none of these students had actually earned a diploma, its foreign equivalent, or a GED:

    (1)    R.A.

    (2)    J.V.B.

    (3)    C.D.J.J.

    (4)    R.A.D.

    (5)    V.D.

---

[2] Relator has provided to the United States the full names of these students

(6) M.J.F.

(7) I.G.

(8) W.J.

(9) E.L.

(10) F.L.

(11) L.O.

(12) B.O.

(13) J.J.

(14) M.P.

(15) D.P.

(16) L.R.P.

(17) G.P.

(18) A.P.

(19) M.P.

(20) L.P.

(21) A.O.R.

(22) S.S

(23) W.T.

(24) S.T.

(25) D.V., and

(26) G.Y.

Relator files as Exhibits 2 through 27, along with an index, materials evidencing these 26 students' lack of a legitimate high school diploma or its equivalent. The attachments include

four main types of documents: Documents that appear to be foreign diplomas (which are fake); emails between FCC Customer Service Coordinator Kema Barkley and Universal Translation & Evaluation Services President Rose Hart; Universal Translation & Evaluation Services General Evaluation Reports signed by Rose Hart; and FCC/UEI College Foreign Diploma Evaluation Applications. Relator does not have all four types of documents for each student, but affirms that the documents she does have for each student indicate that FCC was using each student to fraudulently request and/or obtain Title IV funds. The common thread in all of these instances of fraud is the fact that FCC led the government to believe that these students were eligible for Title IV funding despite the fact that none of these students had earned a GED or the equivalent of a high school diploma.

48. The United States sustained damages as a result of FCC's false claims.

## VI. CAUSES OF ACTION

### COUNT I: FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A) (2016))

49. Relator re-alleges and incorporates herein, Paragraphs 1 through 48 of this Complaint.

50. Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A) (2016), specifically, the claims for student loans and Pell Grant payments under the Title IV, HEA student financial assistance programs.

51. Because of Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $10,957 and not more than $21,916 for each violation.

## COUNT II: FALSE STATEMENTS (31 U.S.C. § 3729(a)(1)(B) (2016))

52. Relator re-alleges and incorporates herein, Paragraphs 1 through 48 of this Complaint.

53. Defendant Florida Career College knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim and/or to get the United States to pay or approve false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B) (2016).

54. Because of Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $10,957 and not more than $21,916 for each violation.

## COUNT III: UNJUST ENRICHMENT

55. Relator re-alleges and incorporates herein, Paragraphs 1 through 48 of this Complaint.

56. By reason of the foregoing conduct and in violation of federal law, Defendants were unjustly enriched and are liable to account for and pay such amounts, which are to be determined at trial, to the United States.

## COUNT IV: PAYMENT BY MISTAKE

57. Relator re-alleges and incorporates herein, Paragraphs 1 through 48 of this Complaint.

58. By reason of the foregoing conduct of the Defendants, the United States made payment under mistake of fact.

59. As a result of these payments made by the United States under mistake of fact, the United States has sustained damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator, Roselyn Metayer, on behalf of Plaintiff, the United States, demands judgement in its favor and against Defendants IEC US HOLDINGS, INC.; FLORIDA CAREER COLLEGE; and its affiliate FLORIDA CAREER COLLEGE WEST PALM BEACH:

a. Under Counts I and II (FCA), for an amount of the United States' damages, trebled as required by law, plus such civil penalties as are required by law, together with all such further relief as may be just and proper;

b. Alternatively, under Count III (Unjust Enrichment), for an accounting and the amount by which Defendants were unjustly enriched, plus interest and costs, and expenses, and all such further relief as may be just and proper;

c. Under Count IV (Payment by Mistake), for an accounting and the amount the United States paid to the Defendant, plus interest and costs, and expenses, and all such further relief as may be just and proper;

d. Under Counts I and II (FCA), an award to Relator, as the *Qui Tam* plaintiff, of the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) (2016) of the Federal False Claims Act on the United States' recovery;

e. Under Counts I and II (FCA), an award to Relator of all reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs; and

18

f. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

This 8th day of June, 2018

Respectfully submitted,

By: s/ *John H. Hickey* [signed: Claire Ansya Esq. for]
John H. Hickey, Esq. (FBN 305081)
E: federalcourtfilings@hickeylawfirm.com
HICKEY LAW FIRM, P.A.
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542

Attorneys for
Relator-Plaintiff Roselyn Metayer